PER CURIAM.
Appellant appeals from a final judgment against him for recovery of a real estate broker’s commission. Appellant contends that the evidence does not support the judgment in that it is not shown that he ever agreed to pay or was made aware that the appellee-broker was claiming a real estate commission from him in connection with the transaction; and alternatively, that in view of the trial judge’s finding that the broker represented both seller and purchaser, there being no evidence of the knowledge and consent of this arrangement by either, the broker is not entitled to commission from either party. We agree that the judgment should be reversed.
In January, 1973, appellant received a form letter from a salesman from the broker’s firm inquiring whether appellant desired to sell certain property he owned in Walton County. The letter included the request: “Please add our commission of 10% to your selling price”. Appellant responded by letter dated February 20, 1973, advising that he was not interested in selling the subject property “at this time”, but if he became interested he would contact the salesman personally. There were no further communications between the appellant and broker until early June, 1973, when an officer of the appellee real estate firm came to appellant’s office and presented to him a sales agreement for the property which had the terms of the sale already completed, and which had been signed by the prospective buyer. Appellant executed the sales agreement, but for reasons which are not material to our decision the sale was not completed. So far as the record discloses the first demand upon appellant for pay *1206 ment of a real estate commission was in early December, 1973, in the form of a letter from appellee’s attorney.
The sales agreement, which was prepared by the broker, contains no reference to payment of a real estate commission. The broker’s salesman had talked with the purchaser long before the contract was prepared and had agreed to try to arrange a purchase of appellee’s one-half interest in the property, and the one-half interest owned by another party. The purchaser testified that he understood the purchase price “quoted” to him by the broker was a “net” figure, which meant he paid no commission. There is no direct evidence of any agreement between appellant and the broker-appellee, either oral or written, for the payment of a commission. When contacted by form letter in January the appellant made known his intentions that he did not desire to employ the broker to sell his property, and his rejection letter of February 20 was a rejection of the invitation by the broker to sell the property for a 10% commission. Thereafter, in June, the broker submitted to appellant a sales agreement which had already been completed and signed by the purchaser, which provided for no payment of commission by either party. While we realize that the record in this case may be somewhat incomplete as to what actually transpired, owing to the death of the principal officer of the real estate firm who handled the transaction, there is no evidence of an express contract for commission between the parties. When the broker tendered the sales agreement to appellant it was the broker’s duty to inform him at that time, by including it in the written agreement or by informing him in some other positive way, that he intended to claim a commission on the sale. Otherwise, the broker’s actions were misleading, the agreement itself was incomplete, and it failed to disclose an important condition that the appellant was entitled to have presented to him for his consideration before he signed the contract. For a case not directly in point, but nevertheless persuasive, see Skinner Mfg. Co. v. Douville, 57 Fla. 180, 49 So. 125 (1909).
We cannot agree with the trial court’s finding that appellant “engaged” the broker, and we tend to view the evidence as insufficient to warrant a finding of an implied agreement. However, we prefer to base our decision on other grounds. If there was a broker-principal relationship it was implied from the conduct of the parties. The final judgment contains the finding that the appellee-broker represented both the appellant-seller, and the purchaser and that appellant was accordingly obligated to pay only one-half of the 10% commission on the sale. We will accept the trial court’s finding and reject appel-lee’s cross-appeal on this point. If the circumstances sufficiently establish an implied agreement between appellant and appellee, they are equally sufficient to establish such an agreement between appellee and the purchaser. Accordingly, we must reverse the judgment because absent agreement between the parties, a broker may not act as agent for both the seller and the purchaser in the same transaction. Violation of this rule calls for a forfeiture of compensation for the broker’s services. 7 Fla.Jur.2d §§ 64, 65, and 66; Carter v. Owens, 58 Fla. 204 (1909), 50 So. 641; and Quinn v. Phipps, 93 Fla. 805 (1927), 113 So. 419, 54 A.L.R. 1173.
Under the circumstances presented by this ease it appears that both seller and purchaser were unwittingly handed an invitation to a lawsuit, and that the interests of neither were well served.
The judgment appealed from is hereby reversed.
McCORD, Acting C. J., and BOOTH and LARRY G. SMITH, JJ., concur.